IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| UNITED STATES OF AMERICA, **Plaintiff(s)** v. ONE DODGE DURANGO 2004, <u>et al.</u>, **Defendant(s)** | **CIVIL NO.** 05-1081 (FAB) |

**OPINION AND ORDER**

BESOSA, District Judge.

On January 24, 2005, the United States filed this action for forfeiture in rem under 18 U.S.C. §§ 881(a)(4) and (6) (Docket No. 1). The United States seeks forfeiture of a Dodge Durango 2004 and approximately $328,673 in U.S. currency seized from the defendant following a search of his residence pursuant to a search warrant. On March 10, 2006, the United States moved for summary judgment in its favor (Docket No. 31). On May 25, 2006, claimant Victor Vega-Encarnacion ("Vega-Encarnacion" or "claimant") opposed the United States' motion (Docket No. 36) and cross moved for summary judgment in his favor (docket No. 38). On September 8, 2006, Vega-Encarnacion moved to dismiss the forfeiture action as to the amount of $317,992 seized from one of the vehicles found at his residence (Docket No. 48). On September 21, 2006, the United States opposed (Docket No. 49). For the reasons discussed below, the Court **GRANTS** the United States' motion for summary judgment, and **DENIES**

Civil No. 05-1081 (FAB)                                               2

claimant's cross-motion for summary judgment and motion to dismiss.

## FACTUAL BACKGROUND

On September 10, 2004, Drug Enforcement Agency ("DEA") Special Agents executed a search warrant at Vega-Encarnacion's residence in Trujillo Alto, Puerto Rico.  During the search, DEA agents interviewed Vega-Encarnacion's consensual wife, Ivelisse Sterling ("Sterling"), who stated that at the time both she and her husband were unemployed.  She also stated that Vega-Encarnacion had purchased the Dodge Durango vehicle subject of this proceeding and had registered it under her name.  There were other vehicles at the residence which the agents knew through their surveillance were associated with Vega-Encarnacion.

During an inventory search of the vehicles, the agents found $4,110 in U.S. currency inside the Dodge Durango vehicle.  In a Nissan Armada, which the agents later learned had been reported stolen by its owner, they found several boxes which contained a total of $317,992 in U.S. currency.  Inside a Toyota Tundra, the agents found $5,416 in U.S. currency.  During their surveillance of the claimant, DEA agents observed him driving the aforementioned vehicles while coordinating his drug trafficking business.  Also on September 10, 2004, DEA agents arrested Vega-Encarnacion and seized $1,155.08 in U.S. currency that he had in his possession.

On October 7, 2004, a grand jury sitting in this district issued a superseding indictment, charging Vega-Encarnacion with two

Civil No. 05-1081 (FAB)                                                3

counts of conspiracy to distribute and possession with intent to distribute approximately 449.4 kilograms of cocaine and 3.37 kilograms of heroin.  On November 3, 2005, after three days of trial, Vega-Encarnacion pled guilty to both counts.

## DISCUSSION

A. Summary Judgment Standard

    The court's discretion to grant summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 states, in pertinent part, that the court may grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); See also Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000).

    Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  See Fed.R.Civ.P. 56(c).  The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

    Once a properly supported motion has been presented before the court, the opposing party has the burden of demonstrating that a trial-worthy issue exists that would warrant the court's denial of

Civil No. 05-1081 (FAB)                                                  4

the motion for summary judgment.  For issues where the opposing party bears the ultimate burden of proof, that party cannot merely rely on the absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute.  See Suarez v. Pueblo Int'l, Inc., 229 F.3d 49 (1st Cir. 2000).

In order for a factual controversy to prevent summary judgment, the contested facts must be "material" and the dispute must be "genuine".  "Material" means that a contested fact has the potential to change the outcome of the suit under governing law.  The issue is "genuine" when a reasonable jury could return a verdict for the nonmoving party based on the evidence.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is well settled that "[t]he mere existence of a scintilla of evidence" is insufficient to defeat a properly supported motion for summary judgment." Id. at 252.  It is therefore necessary that "a party opposing summary judgment must present definite, competent evidence to rebut the motion."  Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).

In making this assessment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging in all reasonable inferences in that party's favor."  Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). The court may safely ignore "conclusory allegations, improbable

Civil No. 05-1081 (FAB)                                                5

inferences, and unsupported speculation."  Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).

B. The United States' Motion for Summary Judgment[1]

The United States seeks forfeiture of the Dodge Durango 2004 vehicle and the $328,673 in U.S. currency pursuant to 21 U.S.C. §§ 881(a)(4) and (6), which provide that

> (a) The following shall be subject to forfeiture to the United States and no property right shall exist in them:
>
>     . . .
>
>     (4) All conveyances, including aircraft, vehicles, or vessels, which are used, or are intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of property described in paragraph (1), (2), or (9).
>
>     . . .
>
>     (6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

Pursuant to the Civil Asset Forfeiture Reform Act ("CAFRA"), "the burden of proof is on the United States to establish, by a preponderance of the evidence, that the property is subject to forfeiture."  18 U.S.C. § 983(c)(1).  For this purpose, "the

---

[1] Inasmuch as claimant relies on the arguments advanced in his opposition to summary judgment to support his cross-motion for summary judgment, the Court need not engage in separate consideration of his cross-motion.

Civil No. 05-1081 (FAB)                                                    6

Government may use evidence gathered after the filing of a complaint for forfeiture . . ."  18 U.S.C. § 983(c)(2).  Where, as here, the "Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense."  18 U.S.C. § 983(c)(3).  Because the United States is proceeding under 21 U.S.C. § 881, it must establish a substantial connection between the property and currency and a criminal offense involving the exchange of a controlled substance.  See 21 U.S.C. §§ 881(a)(4) and (6); see also U.S. v. $58,920.00 in U.S. Currency, 385 F.Supp.2d 144, 150 (D.P.R. 2005).  The United States, however, need not link the defendant property to a particular drug transaction.  See, e.g., U.S. v. $40,000.00 in U.S. Currency, 999 F.Supp. 234, 239 (D.P.R. 1998); United States v. $59,074.00 in U.S. Currency, 959 F.Supp. 243, 249 (D.N.J. 1997); U.S. v. Parcels of Real Property With Bldg., Appurtenances and Improvements, 913 F.2d 1, 3 (1st Cir. 1990).  "The probable cause showing need only link the defendant property with illegal drug activity generally, not to a particular transaction."  U.S. (Drug Enforcement Agency) v. One 1987 Jeep Wrangler, 972 F.2d 472, 476 (2nd Cir. 1992).

   "Once the Government meets its burden, a claimant has the burden to establish any defenses to forfeiture, also by a

Civil No. 05-1081 (FAB)                                                7

preponderance of the evidence."  U.S. v. Six Negotiable Checks in Various Denominations Totaling One Hundred, 207 F.Supp.2d 677, 683 (E.D. Mich. 2002); see also U.S. v. 30 Acre Tract of Land, 425 F.Supp.2d 704, 709 (M.D.N.C. 2006).

In support of its motion, the United States proffers that the DEA had targeted the claimant for his participation in the distribution of cocaine base and heroin, as well as his involvement in money laundering activities.  Vega-Encarnacion has a criminal record that dates back to 1989 when he was convicted on charges of drug distribution and conspiracy to posses a firearm.  When the DEA conducted its investigation into claimant's activities in 2004, he was still serving a period of probation for the 1989 conviction.  On September 10, 2004, DEA agents arrested Vega-Encarnacion and the United States charged him with conspiracy to distribute narcotics and possession with intent to distribute narcotics.  On November 3, 2005, after three days of trial, Vega-Encarnacion pled guilty to both counts of the superseding indictment.[2]  "A claimant's record of drug activity is a highly probative factor in the forfeiture calculus."  United States v. $67,220.00 in U.S. Currency, 957 F.2d 280, 286 (6th Cir.1992).  See also United States v. $87,118.00 in U.S. Currency, 95 F.3d 511, 519 (7th Cir. 1996); United States v. $19,960.00, 897 F.2d 1457, 1462-63 (8th Cir. 1990).

---

[2] The superseding indictment contained a third count which did not charge Vega-Encarnacion.

Civil No. 05-1081 (FAB)                                                   8

To establish a connection between the vehicles and drug trafficking, the United States proffers that on July 15, 2004, Vega-Encarnacion used the Nissan Armada vehicle to meet with the cooperator. Furthermore, on August 18, 2004, Vega-Encarnacion was observed driving the Dodge Durango 2004 vehicle to and from a meeting with a DEA cooperator. During both meetings, he discussed matters related to his drug trafficking business.

In regard to the currency, the United States proffers that the unusually large amounts of currency subject of this action were found in shoe boxes inside the vehicles claimant used to conduct drug trafficking business, that the source of the currency is unknown, and that claimant has offered no plausible explanation as to the source of the currency.

> [I]n assessing probable cause, an "extremely large amount of money found in the household itself is strong evidence that the money was furnished or intended to be furnished in return for drugs." However, the test requires more than the mere existence of a large amount of cash to establish a connection between that cash and illegal drug transactions; the money must be "in combination with other persuasive circumstantial evidence."

U.S. v. Padilla, 888 F.2d 642, 644 (9th Cir. 1989)(citations omitted). It is not fatal to the United States' case, however, that no drugs or drug paraphernalia were found with the currency when it was seized. See United States v. One Lot of U.S. Currency($36,634), 103 F.3d 1048, 1055 (1st Cir. 1997).

The defendant argues in opposition that the United States has not met its burden because it has not established how the meetings

Civil No. 05-1081 (FAB)                                                9

which the DEA agents observed him driving the vehicles to facilitated the failed importation scheme for which he was convicted in November 2005. He further argues that the United States has not shown that the vehicles were an "integral part" of any drug transaction or money laundering activity. Vega-Encarnacion relies on <u>United States v. One 1972 Chevrolet Corvette</u>, 625 F.2d 1026, 1029-30 (1st Cir. 1980), for the proposition that the mere fact that he used the Dodge Durango 2004 vehicle to transport himself to the meetings with the cooperator is insufficient to establish the requisite link between the vehicle and a drug transaction.

His reliance on <u>One 1972 Chevrolet Corvette</u> is misplaced, however. In that case, the claimant had fronted the money to buy the drug shipment and was meeting a conspirator to receive his share of the proceeds. The meeting to which the claimant drove the defendant vehicle took place <u>after</u> the actual drug transaction had already been completed. The First Circuit Court of Appeals found the vehicle was not forfeitable because the <u>meeting</u> was not an "integral part" of the drug transaction. Thus, contrary to Vega-Encarnacion's contention, it is not necessary to find that the vehicle itself was an "integral part" of the transaction, but only that the vehicle in any manner facilitated the sale. <u>See</u> <u>Id.</u>

In this case, Vega-Encarnacion drove the defendant vehicle to a planning meeting for a drug transaction. Because a planning meeting is without a doubt an "integral part" of a drug transaction,

Civil No. 05-1081 (FAB)                                                        10

the use of the defendant vehicle to drive to the meeting certainly facilitated the sale of the drugs, even if the vehicle itself was not used to transport the drugs.  See, e.g., U.S. v. 1990 Toyota 4Runner, 9 F.3d 651, 652-54 (7th Cir. 1993).  Moreover, as mentioned above, the statute does not require that the United States establish a link between the vehicle and a specific drug transaction, such as the drug importation scheme for which claimant was convicted.

In regards to the currency, Vega-Encarnacion argues that the United States has not shown that it constitutes drug proceeds.  More specifically, he argues that because the United States seized the drug shipment which led to his November 2005 conviction, he did not generate any profit and, thus, the seized currency is not drug proceeds from that transaction.  Furthermore, claimant asserts that the source of the currency is his legitimate business, Victor Development, Inc.

Nevertheless, as mentioned above, the United States need not link the currency to a specific drug transaction, only to drug activity generally.  See One 1987 Jeep Wrangler, 972 F.2d at 476.  Moreover, Claimant offers no proof in support of his proffered theory as to the source fo the currency.  He submitted documentation that shows that the corporation, Victor Development, Inc., does in fact exist and that it was in the process of acquiring construction contracts; but nothing whatsoever was submitted to show how the corporation could raise such a large amount of currency in its brief

Civil No. 05-1081 (FAB)                                                11

six-month existence.  Nor does Vega-Encarnacion offer an explanation as to why he would keep such a large sum of money in currency packed in shoe boxes inside his vehicles.  Without such a showing, and given his prior convictions for drug trafficking and money laundering, claimant simply fails to convince the Court that the source of the currency is anything other than drug or money-laundering proceeds or that it was intended to be furnished in exchange for drugs.

Therefore, the Court finds that the facts established by the United States are sufficient for it to meet its burden of establishing that there is a substantial connection between the property and currency and claimant's drug trafficking activities. The Dodge Durango 2004 vehicle and the $328,673 in U.S. currency are forfeitable to the United States.[3]

C. Claimant's Motion to Dismiss

Vega-Encarnacion argues that the United States' complaint against the $317,992 in U.S. currency found inside the Nissan Armada vehicle must be dismissed because it failed to provide him with written notice of forfeiture within the statutory period for doing so.

---

[3] Claimant also argues that the complaint must be dismissed because the vehicles were seized without a warrant in violation of CAFRA and his constitutional rights.  The argument is easily dismissed because the United States has shown that it had probable cause to believe that the vehicles were subject to forfeiture inasmuch as they had been used to facilitate a drug transaction as discussed above.  See 18 U.S.C. § 981(a)(2)(B).

Civil No. 05-1081 (FAB)                                              12

> [I]n any nonjudicial civil forfeiture proceeding under a civil forfeiture statute, with respect to which the Government is required to send written notice to interested parties, such notice shall be sent in a manner to achieve proper notice as soon as practicable, and in no case more than sixty days after the date of the seizure.

18 U.S.C. § 983(a)(1)(A)(i). Vega-Encarnacion asserts that the United States seized the defendant currency on September 10, 2004, but did not mail written notice of forfeiture until November 15, 2004, sixty-one days following the seizure.

Claimant's argument fails, however, because "[i]f . . . an interested party has <u>actual knowledge</u> of ongoing forfeiture proceedings from other sources, inadequacies in the notice afforded by the government will not work a deprivation of due process." <u>Gonzalez-Gonzalez v. U.S.</u>, 257 F.3d 31, 36 (1st Cir. 2001)(emphasis added). "[T]he actual knowledge required to defeat a notice-based due process challenge is advance notice-in-fact of forfeiture proceedings, as opposed to notice-in-fact of seizure." <u>Id.</u> at 38.

In this case, the United States obtained an indictment against Vega-Encarnacion which contains a forfeiture allegation (<u>See</u> Criminal No. 04-278 (JAG), Docket No. 18) on October 7, 2004, that is within sixty days after seizure of the currency. Although the indictment does not specifically identify the defendant property and currency, the description given therein of the property which would be subject to forfeiture provided adequate notice to claimant that any property or currency which constitutes drug proceeds or is derived from drug proceeds, or that was used in any manner to

Civil No. 05-1081 (FAB)                                                    13

facilitate the distribution or possession of narcotics, were subject to forfeiture.  Accordingly, even if it sent written notice of the forfeiture one day late, because claimant had actual notice of the United States' intent to forfeit the defendant property, the Court finds that Vega-Encarnacion suffered no prejudice from the inadequate notice.  The motion is denied.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the United States' motion for summary judgment (Docket No. 31).  Vega-Encarnacion's cross motion for summary judgment (Docket No. 38) and motion to dismiss (Docket No. 48) are hereby **DENIED**.  The defendant vehicle and currency are forfeited to the United States.  Judgment shall enter accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 15th day of November 2006.

s/ Francisco A. Besosa
FRANCISCO A. BESOSA
United States District Judge